**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **NO.   1:25-CR-00069** |
| | : | |
| **vs.** | : | |
| | : | |
| **JOHN J. GALLAGHER** | : | |

<u>**JOHN GALLAGHER'S RESPONSE TO GOVERNMENT'S NOTICE OF RETURN OF DIGITAL EVIDENCE AND MOTION FOR PRESERVATION OF DIGITAL EVIDENCE**</u>

**I.      Introduction**

Defendant John Gallagher, by and through undersigned counsel, respectfully responds to the government's "Notice of Return of Digital Evidence" (April 15, 2026) (ECF No. 110) ("Notice of Return"). Defendant John Gallagher moves for an order (1) requiring preservation of the digital evidence seized pending further order of the Court, (2) prohibiting deletion or destruction of any copies or images until the Court resolves the issues raised herein, and (3) directing a targeted, warrant-consistent review by a Special Master or a filter team to ensure compliance with the government's constitutional and rule-based disclosure obligations.

The Indictment filed March 13, 2025 alleges criminal conspiracy related to investor fraud. Because those charges arise from Theia's operations and Mr. Gallagher's interactions with Mr. Olson and other co-defendants, the digital evidence reflecting Theia operations and communications is undoubtedly material to his defense. Mr. Gallagher first requested the production of this digital evidence in June 2025, and since that date, has made three additional requests for the same. Most recently, the government communicated via correspondence and in hearings this year that the digital evidence would be produced.

However, in a stark reversal of position on April 15, 2026, the government filed a Notice of Return, articulating their intent to delete the digital evidence, and informing the Court and the parties that the digital evidence from the Olson search had already been returned on April 2, 2026.  The government alleges that their decision to return the evidence is "in accordance with legal precedent." The government's position misconstrues the legal precedent in *United States v. Balwani*, No. 5:18-CR-00258-EJD-2, 2022 WL 1405404 (N.D. Cal. May 4, 2022) and *United States v. Collins,* 409 F. Supp. 3d 228 (S.D.N.Y. 2019). Counsel for John Gallagher communicated an immediate objection on April 15, 2026 to the Notice of Return and the deletion plan. John Gallagher opposes the government's deletion of the evidence as set forth below.

## II.    Factual Background

## A.  Search and Seizure

On June 25, 2021, the government obtained and executed search warrant 21-mr-860, authorizing the search of Erlend Olson's personal residence in Albuquerque, New Mexico.  The warrant authorized the seizure of materials between 2015 and 2021, including: (a) all financial records; (b) all records of income, assets, expenses, and transactions; (c) all documents relating to Theia and numerous affiliated or unknown entities; (d) all communications with a broad universe of individuals; and (e) all electronic devices and associated data.

On June 28, 2021, the government obtained Search Warrant 21-sw-185 authorizing the search of Theia Group, Inc. (Theia) with offices in Washington, D.C. The warrant authorized the seizure of a broad range of financial, corporate, and communication records from 2015 through 2021. The Theia warrant permitted the government to seize virtually every document, paper and digital, associated with the company for the entirety of the company's existence. The warrant reflects a clear representation of immediacy and ongoing criminal activity, signaling the need for

expedited judicial approval. The government alleged that the criminal activity was actively

unfolding, and that evidence was at risk of concealment or dissipation in real time, precisely the

kind of exigency used to justify immediate and covert search authority.

From the searches, the government seized a total of 42 devices with 23 terabytes of data

from devices that were imaged onsite at the Olson residence and at Theia headquarters.[1] In

addition, hardware in the form of laptops, computers, and hard drives were taken from Theia

Headquarters for off-site imaging. All of the digital evidence seized, the mirrored images and the

hard drives, have remained in the custody, control, and possession of the IRS-CI since June 30,

2021. All of the digital evidence seized in New Mexico was returned to Olson's counsel on April

2, 2026 without consent of this Court or notice to co-defendants. The digital evidence from the

Theia search remains in the custody of the IRS-CI and the government has notified counsel for

the asset holder, Brevet, of their intent to return the evidence from the Theia search. None of the

42 devices were reviewed, scoped or filtered at any time since the search in June 2021.

The government's plan is to delete all of the data from government systems.

## B.  The History of Relevant Discovery

After receiving the first government production in May 2025, John Gallagher's counsel

made a discovery request via email to the government on June 19, 2025, requesting the data from

the devices seized in the search. In part, the request was for the materials seized in the New

Mexico search.[2] The government did not respond to this request. On October 30, 2025, John

---

[1] In actuality, the government seized 44 devices.  The government also imaged two phones of John Gallagher seized on the day of the search and seizure, but these are not listed in the Inventory. The Gallagher phone data was filtered for attorney client privilege.

[2] *See* Exhibit 1, John Gallagher's discovery email thread of June 19, 2025.  In the same, the undersigned sent the following request: "[i]t appears from the MOIs and some of the Olson materials that the Government, pursuant to a search warrant, seized Olson's hardware. However, we were not able to find property records or discern what hardware was taken.

Gallagher's counsel followed up regarding this outstanding discovery, re-requesting the same information. The government's response was that they were still working on answering the additional questions. *See* Exhibit 2, John Gallagher's follow-up discovery email of October 2025.

At the status conference on July 7, 2025, the government indicated:

> THE COURT: Give me a little description of the million documents. What are we talking about?
> MS. HUGHES: The documents are a combination of – **there's video, audio files, and then a <u>lot of documents that were seized during search warrants both at the headquarters of Theia Group, as well as at Mr. Olson's residence in Albuquerque, New Mexico. Hard drives, documents, all kinds of things.</u>**
> THE COURT: And how many of the million documents are you talking about introducing at trial?
>
> MS. HUGHES: It would certainly be a subset of that number of documents . . . .

*See* Exhibit 3, Notes of Hearing, July 7, 2025, p.6. (Emphasis added)

On December 30, 2025, John Gallagher's counsel made a third request for the data from the search and seizure. While they did not respond in writing, at the status conference on January 8, 2026, the government represented that a large production was forthcoming "because it would include approximately 16 devices that were imaged on-site during the execution of the search warrant on Theia's headquarters." *See* Exhibit 4, Notes from Hearing on January 8, 2026, p.5.

---

o If hardware was taken, what was taken and where are the documents describing chain of custody?
o If hardware was taken, were forensic downloads done?
o If so, where is the original mirror image data?"

On January 16, 2026, in response to his December 30, 2025 request, the government wrote:

> During the execution of a lawfully obtained search warrant on Mr. Olson's residence, the Government imaged 16 devices. Those images have been maintained on the filter side and have not been reviewed by the investigative team. The filter team is working to ensure that all data from those 16 devices is uploaded to the filter team's database. Once that process is complete, data that is responsive to relevant search terms will be disseminated in accordance with the filter protocol. Again, no member of the prosecution team has reviewed any information from Mr. Olson's seized hardware.

On February 11, 2026, John Gallagher's counsel renewed his request for the devices from the search and the government responded that the data would be turned over to all defense counsel after Olson's counsel has conducted a privilege review.

In a marked reversal of its prior position, the government filed a "Notice of Return of Digital Evidence" on April 15, 2026. In that filing, the government represents that in or around January 2026, they "located" approximately 23 terabytes (TB) of unfiltered, unreviewed data that is contained on forensic images of 42 devices that law enforcement officers had obtained in June 2021 from the two raids. It is worth noting that the lead agent in the case, Special Agent Charles Sublett, who lead the New Mexico search, has been in attendance at all hearings in the case, and must have been aware of what was seized and where it was located for the last five years.

The government has determined that it will not review or use any of the unreviewed data and, rather than search the data, filter the data, and/or produce it in discovery, the government returned Mr. Olson's digital data to Olson's counsel on April 2, 2026 and plans to return the digital data of Theia to Brevet. The government also plans to return the actual devices that have been housed at IRS-CI since June 2021 to Brevet. The government intends to delete all data seized in the raid from government systems. The government asserts that because the material was never reviewed or scoped in accordance with the warrants, it is not within the government's

lawful possession, custody, or control and therefore must be returned and deleted from government systems.

Mr. Gallagher most respectfully submits that the Government's conflicting and ever changing representations are indicative of either a lack of diligence or a prosecution team who does not know the facts of their own case,. The within motion prays that the Court will stop the government from destroying exculpatory evidence.

## C. Exculpatory Evidence

The Indictment claims that false and fraudulent documents lie at the center of this case, a complex fraud-conspiracy. At multiple points in the investigation, witnesses identified the existence of potentially exculpatory evidence.  Yet the government neither pursued those leads nor examined the sources most likely to contain that material, including original files whose metadata would have revealed authorship and provenance but which were never reviewed. This was not because the evidence was unavailable. Instead, the Government sat on troves of documents without conducting any evaluation of the same and now seeks to destroy the same. The government's request will cause irreparable harm to Mr. Gallagher and will deny him of the right to a full and fair defense.

First, in the body of the Indictment, the government referenced a purported bank statement reflecting a balance in excess of one hundred million dollars that was purportedly shown to Investor 5. The government could not open or analyze the document. To the extent an original, unencrypted version existed, it likely is available from one or more of the seized devices. However, no review of any of the seized evidence was undertaken.

Second, during the alleged Bulltick fraud[3] when shown one of the documents purported to be at the heart of the alleged fraud, several witnesses informed the government that they were shown a document that is different than what the government has suggested is a phony, fraudulent bank statement. These witness disclosures put the government on notice that additional, potentially exculpatory evidence existed. It is axiomatic that the provenance of the JP Morgan horizontal bank statement is an extremely important piece of evidence and could inculpate some defendants and exculpate Mr. Gallagher. While the Government may be excused for failing to locate the JP Morgan document, they cannot be pardoned for failing to look for the document, and should be sanctioned for seeking to delete a trove of documents that may potentially contain it.

Third, although 42 digital devices were seized from the company and its founder, the government never analyzed their contents. As a result, many documents in the record exist only as email attachments, stripped of the native metadata that could establish authorship, creation date, and provenance. In addition, some of the files produced were corrupted and cannot be read at all. By failing to review the seized devices – the most likely repository of the original files – the government left the most reliable evidence of origin and authenticity unexamined. Taken together, these examples establish that potentially exculpatory evidence was left unexamined on seized devices, not because it could not be found, but because the government did not look.

III.    **Argument**

---

[3] The indictment is a scattershot of multiple allegations. While Mr. Gallagher expects to file motions to pare down what has been alleged, the Bulltick fraud was allegedly an attempt to seek additional financing from a group of investors toward the end of 2020. At the heart of the Bulltick fraud is a document that was described as a bank statement purportedly from JP Morgan that was listed horizontally. That document has never been produced in discovery.

This matter presents a fundamental question about the government's constitutional and rule-based obligations when it seizes vast quantities of digital evidence, retains that evidence for years without review, and then announces its intention to delete all copies without judicial consent and without allowing the defense any opportunity to identify potentially exculpatory material. The government's justification inverts established law. It asserts that because the data was never reviewed, it falls outside the government's lawful possession and control, and therefore must be returned and deleted. This argument treats its failure to review evidence as a fact that relieves it of constitutional duties, rather than as a prosecutorial choice that triggers them. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government must disclose exculpatory evidence within its possession and control. Under Federal Rule of Criminal Procedure 16, the government must disclose records material to preparing the defense. None of these authorities tie the government's obligations to whether it has reviewed the evidence; those obligations arise from possession and control, not from the government's decision to examine or ignore what it has seized.

**A. The Government's Reliance on *Balwani* and *Collins* Is Misplaced**

The government's reliance on *United States v. Balwani* is flawed because it omits the critical fact that, in *Balwani*, the government actually executed the warrant. There, agents seized 16 digital devices and then reviewed 21 terabytes of data. The government applied the terms of the warrant, both the temporal and substantive criteria, through the standard process of scoping and segregation that routinely happens in cases where large quantities of digital data are seized. The government identified a defined subset of responsive material while isolating the remainder as non-responsive, and the responsive data was limited to 772 gigabytes. It was only because of that segregation that the court concluded the government did not possess the non-responsive

data, explaining that "[o]nce the data has been segregated (and, if necessary, redacted), the government agents involved in the investigation should be allowed to examine only the information covered by the terms of the warrant." *Id.* at 15. Here, by contrast, the government admits it never reviewed or scoped the 23 terabytes seized pursuant to the warrants. Having failed to perform any segregation at all, the government cannot now assert that the entirety of the data falls outside the warrant or beyond its possession.

The Olson and Theia warrants authorized seizure of documents spanning the entire existence of the company, from its formation in 2015 through 2021, encompassing expansive categories of financial records, communications, and business materials. That breadth defines the scope of lawful possession. Unlike in *Balwani*, where non-responsive data was identified through an actual segregation process, the government here never determined what materials were responsive to the warrant. That step, segregation, never occurred. The government's attempt to equate non-review with non-possession finds no support in *Balwani* or any other authority and instead rests on a circular premise: that by failing to execute the warrants, the government may avoid the obligations that flow from them. Neither *Balwani* nor the Fourth Amendment permits the government to avoid its obligations through inaction.

Here, in contrast to *Balwani*, the government concedes that no such scoping ever occurred. There was no effort to apply the warrant's date restrictions, no segregation of responsive from non-responsive materials, and no filter-driven narrowing of the dataset. Having failed to perform the very review that justified the result in *Balwani*, the government cannot now invoke that decision to excuse its own inaction.

*Collins* likewise does not support the government's position because it addresses a fundamentally different posture, one in which the government had already conducted a

constitutionally compliant search.  The defense requested that the government re-search data previously determined to be outside the warrant's scope. The court rejected that request. But here, there has been no prior determination of scope at all. The government is not being asked to re-search non-responsive data; it is being called to account for its complete failure to conduct any search at all.

Both *Balwani* and *Collins* assume the existence of a threshold review process that cabins the scope of seized data. That process never occurred here, and the government cannot rely on case law addressing post-review limitations to justify a pre-review abdication.

**B. *Brady* Applies to Unreviewed Evidence in the Government's Possession, and the Government's Failure to Review Does Not Relieve Its Preservation or Disclosure Obligations**

The government's *Brady* obligations extend to all evidence within its possession and control, whether or not the prosecution team has reviewed that evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring disclosure of favorable evidence material to guilt or punishment); *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) (duty extends to evidence known to others acting on the government's behalf). That obligation is not limited to information actually reviewed by prosecutors. The government may not "get around *Brady* by keeping itself in ignorance." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). Courts in this District have likewise made clear that Brady reaches all information in the possession of the Executive Branch. *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).

Here, the government does not dispute that it seized approximately 23 terabytes of data pursuant to warrants and retained that data in its exclusive possession for almost five years. That possession alone is sufficient to trigger its *Brady* obligations. The government's decision not to review the data is a prosecutorial choice—not a limitation on its constitutional duties.

The government's preservation obligations are equally clear. The duty to preserve evidence arises when the evidence "might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). That duty is prophylactic and does not depend on a prior determination of materiality or bad faith. See *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988).

The D.C. Circuit has imposed an affirmative obligation on the government to maintain "rigorous and systematic procedures" to preserve discoverable evidence. *United States v. Bryant,* 439 F.2d 642, 651 (D.C. Cir. 1971). That obligation is triggered by the government's reasonable expectation that seized evidence will be discoverable, not by completion of a scoping review. Applying these principles, the government's position fails for three independent reasons.

First, *Brady* obligations attach to possession, not review. If the government could avoid disclosure simply by declining to examine evidence in its custody, *Brady* would be rendered meaningless in precisely the cases - those involving large volumes of digital data - where its protections are most critical.

Second, the government's preservation duty was triggered at the moment of seizure. The warrants targeted financial records, communications, and business documents central to the charged conduct. The government therefore had every reason to expect that the seized data would contain discoverable and potentially exculpatory evidence. Its failure to review the data does not eliminate that obligation.

Third, the government's proposed deletion of the data would constitute spoliation of potentially material evidence. Once destroyed, the data cannot be recovered, and any *Brady* or Rule 16 obligations would be permanently frustrated. The government bears a heavy burden to justify the loss of evidence and must demonstrate that it implemented and followed adequate

preservation procedures. See *Bryant*, 439 F.2d at 651. It cannot meet that burden where, as here, it retained the data for years without review and now seeks to delete it without ever determining its contents.

Nor is the defense's showing speculative. As set forth above, Mr. Gallagher has identified specific categories of evidence likely contained in the seized data, including native documents, original digital files, and alternative versions of key records, that bear directly on issues of authorship, authenticity, and intent. Under *United States v. Bagley,* 473 U.S. 667, 682 (1985), evidence is material where there is a reasonable probability that its disclosure would affect the outcome. The identified categories easily satisfy that standard. In short, the government cannot use its own failure to review seized evidence as a shield against its constitutional obligations. What the government possesses, it must preserve. And what it must preserve, it cannot destroy without first ensuring compliance with *Brady*.

## D. Federal Rule of Criminal Procedure 16 Independently Requires Production of Seized Digital Evidence Material to Preparing the Defense

Federal Rule of Criminal Procedure 16 requires the government to produce documents and data within its possession, custody, or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). This standard is deliberately broad and imposes a low threshold. Evidence is material if it bears "some abstract logical relationship" to the issues in the case or would play "an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd,* 992 F.2d 348, 351 (D.C. Cir. 1993); *see also United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1993) (materiality turns on the needs of the defense, not the government's intended use of the evidence). Rule 16 is broader than *Brady* and applies regardless of whether the evidence is exculpatory or whether the government intends to introduce it at trial.

That standard is easily satisfied here. The government cannot avoid Rule 16 by asserting that it has chosen not to review or use the data. Rule 16 turns on materiality to the defense, not on prosecutorial strategy. See *Marshall*, 132 F.3d at 68. Nor can the government defeat its obligation by declining to examine evidence in its possession. To hold otherwise would allow the government to nullify Rule 16 simply by refusing to look at seized evidence. Because the data is material and remains within the government's possession and control, Rule 16 requires its preservation and production.

**E. The Court Should Order Preservation and a Court-Supervised, Warrant-Consistent Review**

This Court has both the authority and the obligation to prevent the destruction of evidence that may be material to a pending criminal prosecution. Federal courts possess inherent authority to manage proceedings and safeguard the integrity of the judicial process, including by ordering the preservation of evidence subject to disclosure obligations. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing courts' inherent power to ensure the orderly and fair administration of justice.) That authority is particularly critical where, as here, the government proposes to destroy evidence that is subject to its constitutional and rule-based disclosure obligations. Courts routinely intervene to prevent spoliation where evidence may be material and irreparable harm would result from its loss. *See United States v. Bryant*, 439 F.2d 642, 651 (D.C. Cir. 1971) (requiring "rigorous and systematic procedures" to preserve discoverable evidence and placing burden on government to justify loss of evidence). Once destroyed, the evidence cannot be recovered, and any *Brady* or Rule 16 obligations are permanently defeated. The government's proposed course - returning and deleting 23 terabytes of seized evidence without review - would place the scope of discovery entirely within prosecutorial discretion and would effectively insulate potentially exculpatory evidence from disclosure. Courts have repeatedly

rejected such unilateral control over evidence subject to disclosure obligations. See *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (prosecutor has duty to ensure disclosure and cannot avoid responsibility by failing to learn of favorable evidence).

The appropriate remedy is neither extraordinary nor burdensome.  Mr. Gallagher requests the completion of the process the government was required to undertake when it seized the data. Courts addressing large volumes of digital evidence routinely employ neutral review mechanisms, including special masters and filter teams, to ensure compliance with warrant limitations while protecting privilege and privacy interests. That approach preserves the evidentiary record while maintaining appropriate safeguards.

Accordingly, the Court should:

1.  Order the immediate preservation of all forensic images, devices, and associated data seized pursuant to the warrants;

2.  Prohibit any deletion, transfer, or destruction of that evidence absent further order of the Court; and

3.  Direct a targeted, warrant-consistent review protocol, conducted by a filter team or Special Master.

This remedy balances all competing interests. It preserves potentially exculpatory evidence, enforces the limits of the warrants, protects privilege, and ensures compliance with *Brady* and Rule 16. By contrast, the government's proposed deletion would permanently foreclose access to evidence central to the defense and undermine the fairness of these proceedings.

**IV. CONCLUSION**

The government seized evidence central to this prosecution, retained it for nearly five years without review, and now seeks to destroy it without ever determining its contents. That position is not supported by *Balwani*, *Collins*, or any other authority. It is incompatible with the government's obligations under *Brady v. Maryland*, Federal Rule of Criminal Procedure 16, its independent duty to preserve evidence, and all notions of due process, fairness, and the pursuit of justice. The government asks this Court to endorse a rule that would allow it to avoid its disclosure obligations through inaction, by declining to review evidence in its possession and then eliminating it entirely. That is not the law. The government's obligations arise from possession and control, not from its decision to examine or ignore what it has seized.

The risk of irreparable harm is immediate and concrete. Once deleted, the evidence is gone forever. And with it, any opportunity for the defense to identify material, exculpatory information essential to a fair trial.

Finally, Mr. Gallagher most respectfully submits that the United States Attorney for the District of Columbia should be reminded that

> [t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935) (Sutherland, J.).

The remedy herein is straightforward. The evidence should be preserved. There should be a targeted, warrant-consistent review. By so doing, this Honorable Court will ensure that the government complies with its constitutional and rule-based obligations.

For these reasons, Mr. Gallagher respectfully requests that the Court grant the requested relief.

*Respectfully submitted,*

   */s/ Michael J. Diamondstein*
**Michael J. Diamondstein**
**Counsel for John J. Gallagher**
Michael J. Diamondstein, P.C.
Suite 1815
Two Penn Center Plaza
15th & John F. Kennedy Blvd.
Philadelphia, PA 19102
(215) 940-2700
mjd@michaeldiamondstein.com

   */s/ Joan D. Gallagher*
*Joan D. Gallagher*
*Counsel for John J. Gallagher*
Joan Gallagher Law, P.C.
1600 Market Street
Suite 1320
Philadelphia, PA 19103
(215) 963-1555
joanie@gallagher-law.com

## CERTIFICATE OF SERVICE

On this **5th** day of **May, 2026,** Joan D. Gallagher and Michael J. Diamondstein, being duly sworn according to law, hereby certify that a true and correct copy of this document was served upon the following individuals in the manner specified:

**The Honorable Royce C. Lambert**
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001
**VIA ECF**

**Clerk's Office**
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001
**VIA ECF**

**Alexis Hughes**
**Rebecca Ross**
U.S. Attorney's Office for the District of Columbia
601 D St NW
Washington, DC 20004
**VIA ECF**

*/s/ Joan D. Gallagher*
**JOAN D. GALLAGHER**
**Attorney for John J. Gallagher**

*/s/ Michael J. Diamondstein*
**MICHAEL J. DIAMONDSTEIN**
**Attorney for John J. Gallagher**