

May 15, 2026

**Nicole H. Sprinzen**
Direct Phone    202-471-3451
Direct Fax       202-499-2941
nsprinzen@cozen.com

**VIA ELECTRONIC MAIL**

Alexis S. Hughes
Trial Attorney
Department of Justice, Criminal Division
Alexis.Hughes@usdoj.gov

Rebecca G. Ross
Jolie F. Zimmerman
Sarah C. Ranney
Assistant U.S. Attorneys
U.S. Attorney for the District of Columbia
Rebecca.Ross2@usdoj.gov
Jolie.Zimmerman@usdoj.gov
Sarah.Ranney@usdoj.gov

**Re:    Defendant Buscher's Motion to Compel [Dkt. 130], United States v. Olson, et al. (25-cr-69 (RCL))**

Dear Alexis:

We write on behalf of our client, Brevet Capital Management LLC/LTS Systems, LLC ("Brevet/LTS").  You have asked us to advise you of Brevet/LTS' position concerning Defendant Stephen Buscher's Motion to Compel Production of Documents Withheld Under Asserted Attorney-Client Privilege [Dkt. 130], filed in the above-referenced matter.

Brevet/LTS is the current lawful and rightful holder of the attorney-client privilege and other protections that originated with Theia Group, Inc. ("Theia"), having explicitly obtained the right to control, assert and/or waive that privilege, similar privileges and protections from the receivership estate of Theia.  As such, Brevet/LTS opposes the arguments of Defendant Buscher in the above-referenced motion that the privilege is legally invalid or that Brevet/LTS lacks the power to invoke it.  Further, Brevet/LTS asserts that the attorney-client privilege, attorney work product and any other protections asserted by Theia, by the Receiver on behalf of the Theia receivership estate, or by Brevet/LTS with respect to any former Theia documents, information or data is and should be maintained without waiver or compromise.

### 1.  Theia's attorney-client privilege still exists.

Federal courts have recognized that the attorney-client privilege survives changes in corporate status where there is an authority capable of asserting the privilege.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) (asserting that privilege passes to those who control the entity's legal interests).  The privilege ceases to be viable only where a company has been (1) dissolved, or (2) is considered defunct or "dead" *and* there are no legal

May 15, 2026
Page 2

_____

or reputational interests left to protect.  *See United States v. Cole,* 569 F. Supp. 3d 696, 701 (N.D. Ohio 2021) (finding that if a company is defunct and no longer has any goodwill or reputation to maintain, there is no policy purpose to continuing the privileges of that company); *see also Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006) (noting that a party seeking to establish privilege of a defunct company must demonstrate authority and good cause to do so).

Theia's attorney-client privilege remains intact.  There is no argument that Theia has been formally dissolved.  Defendant Buscher asserts that Theia's privilege has been extinguished due to its current "void" status, as reflected in Delaware corporate records.  However, the Delaware Division of Corporations' record for Theia actually reflects that its current status is "Void, AR's or Tax Delinquent."  *See* Delaware Corporation Status Report of Theia, attached hereto as Exhibit A.  This designation merely reflects administrative noncompliance—specifically, delinquent filings or payments—and does not necessarily constitute dissolution or termination of the entity's legal existence.  *See* DE Division of Corporations, Glossary of Terms, https://icis.corp.delaware.gov/ecorp/FieldDesc.aspx, last visited May 14, 2026 (defining "Void, AR's or Tax Delinquent" as "a corporation that failed to pay its annual franchise tax for a period of 1 year or a Foreign Corporation that has not filed their annual reports within a 2-year period.").

Theia has not been dissolved under Delaware law and has not undergone any legal termination of its corporate existence.  Its present "void" status arises solely from administrative noncompliance, which is temporary and remediable.  Unlike a dissolved entity, Theia retains the ability to be reinstated through compliance with required fees and filings.  In addition, Brevet/LTS, having acquired and now operating Theia's assets, has a direct and substantial interest in preserving the value associated with those assets.  And there remain legal and reputational interests left to protect with respect thereto.  Accordingly, Theia's privilege has not been extinguished.

### 2.  Brevet/LTS holds Theia's attorney-client privilege.

In August 2023, Brevet/LTS acquired from the receivership estate of Theia and pursuant to a court-approved auction and asset purchase agreement in *FCA Advisors, LLC v. Theia Group, Inc.*, No. 1:21-cv-06995 (S.D.N.Y.), the tangible assets of Theia, including all books, records and electronic files, computer files, and intellectual property assets, as well as the right to own, operate, manage, sell and otherwise dispose of those assets.  Pursuant to that agreement, Brevet/LTS further expressly acquired the attorney-client and other privileges and protections then held by Theia or exercised by the Receiver on behalf of the company.  Following that transaction, Brevet/LTS remains the current and legal holder of Theia's attorney-client and other testimonial privileges and protections.

Federal courts have recognized that attorney-client privilege passes to the acquiring entity where the transaction results in a practical transfer of control over the business, such that the acquiring entity obtained all or substantially all of the seller's assets and continues to hold and manage the assets following the acquisition.  *See MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 248, 252 (W.D.N.Y. 2009) (holding that privilege transferred to the acquiring entity following a foreclosure sale where the purchaser obtained substantially all of the seller's assets, with the court's analysis focusing on the nature of the asset transfer and the acquiror's use of those assets); *see also City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1201

May 15, 2026
Page 3

_____

(C.D. Cal. 2007) (finding that the acquiring entity held the attorney-client privilege where it purchased substantially all of the corporation's assets, effectively including the entirety of the corporation's holdings, and continued use of those assets after the acquisition).

The same reasoning applies here.  Brevet/LTS purchased Theia's assets in a transaction that transferred both operational control and the ability to utilize those assets without limitation. Since acquisition of the assets, as well as the right to control Theia's privileges and protections, Brevet/LTS is legally authorized to and continues to engage in active management and operation of those assets, including by seeking to monetize them through sales, licensing, and other revenue-generating activities.  And by acquiring the right to assert, waive and control Theia's privilege attendant thereto, Brevet/LTS acquired the express right to Theia's privilege.

Theia's privilege remains intact, and Brevet/LTS is the legal holder of Theia's attorney-client privilege, including the right to assert, waive and control it.  Accordingly, Brevet/LTS asserts that it declines to waive the privilege, and instead takes the position that it affirmatively intends to maintain any assertions of privilege made by or on behalf of Theia, or by successors thereto.

Sincerely,

COZEN O'CONNOR

Nicole H. Sprinzen

cc:     Thomas Ingalls, Esq.
        Deanna Clayton, Esq.