## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | : | **NO.** | **1:25-CR-00069** |
| | : | | |
| **vs.** | : | | |
| | : | | |
| **JOHN J. GALLAGHER** | : | | |

### JOHN GALLAGHER'S REPLY TO THE GOVERNMENT'S OPPOSITION (DOC. #147) AND GOVERNMENT'S NOTICE OF RETURN OF DIGITAL EVIDENCE (DOC. #110)

**AND NOW**, John Gallagher, by Michael J. Diamondstein, files the within Reply to Government filings at Document #110 and #147 and avers as follows:

1. Mr. Gallagher incorporates by reference his filings under Document #128.

2. In relevant part, on June 30th, 2021, the Government executed multiple search warrants seizing a trove of digital evidence from Theia headquarters in Washington, D.C. and the home of Erlend Olson in New Mexico.

3. Of some note, that seizure was on the day this motion was filed, five (5) years prior.

4. The seizures resulted in the recovery of twenty-three (23) terabytes (TB) of data from computers, hard drives, and mobile devices.

5. While the legal issues have been addressed in filings by all parties, Mr. Gallagher files the within reply to correct factual averments made by the Government.

6. From the inception of the Government's discovery productions, it was immediately clear that the Government never turned over the evidence seized from the June 30th, 2021 raid.

7. On multiple occasions starting on June 19, 2025, Mr. Gallagher sought production of the missing data.[1]

8. While the Government was aware of Mr. Gallagher's desire for the June 30th, 2021 seized materials, as the case dragged on and months passed, the Government never provided the same.

9. Based upon the Government's representations in and out of Court, Mr. Gallagher was expecting the Government to turn over the materials seized.

10. In a stark reversal, the Government filed its self-styled "Notice of Return of Digital Evidence" on April 15th, 2026, notifying the Court and all defendants of their intent to delete the evidence seized in the raid.

11. In their filing, the Government proffered to this Court that "[i]n or around January 2026, **the government located** approximately 23 terabytes (TB) of **unfiltered,**

---

[1] *See* Exhibit 1 attached.

**unreviewed** data that is contained on forensic images of 42 digital devices that law enforcement officers had obtained in June 2021 . . . ."[2](emphasis added).

12.    A number of the words chosen by the Government in that paragraph are factually incorrect.

13.    The word "located" is defined by the Cambridge Dictionary as meaning "to find or discover the exact position of something."

14.    The clear implication of that artfully worded sentence is that, in January 2026 – akin to the final scene of the movie *Indiana Jones and the Raiders of the Lost Ark* whereupon the Ark of the Covenant is lost in a giant warehouse – somewhere in a Government storage area, the Prosecution Team stumbled upon data that they had not been aware was in their possession.

15.    The Government further proffered that "[s]everal months after the search warrants were executed, on October 29th, 2021, Theia was placed into receivership, and the government started issuing grand jury subpoenas for records to Theia's receiver. The receiver provided tens of thousands of responsive documents, subject to a Clawback Agreement."[3]

---

[2] Document #110 at p.1.

[3] *Id.* at p. 3.

16.    The clear implication of this averment is that, as of the end of October 2021, the Government was no longer interested in the seized data and instead attempted to retrieve evidence through the use of subpoena.

17.    Neither averment is factually true. Said another way: what the Government is suggesting is not what actually occurred in the investigation and prosecution of this case.

18.    The Government was always aware that the seized data was in their possession and were negotiating how to use said data at least up until January of 2023.

19.    Furthermore, up until January of 2026, it was always the Government's intention to make the materials seized on June 30th, 2021 available to the defendants.

20.    On May 31st, 2022, eleven (11) months after the seizure, AUSA Leslie Goemaat prepared a filter protocol purportedly to be reviewed by Nick Sitterly, Esquire for the review of the seized evidence from Mr. Olson.[4]

21.    Furthermore, on January 11th, 2023, nearly one and one half (1 ½) years after the seizure, the Government/prosecution team held a phone conference with Rizwan Qureshi, Esquire of Reed Smith. Mr. Qureshi was representing the Theia receiver at the time. During the phone conference, members of the prosecution team and Mr. Qureshi held discussions "about developing a filter and privilege review

_____

[4] *See* Exhibit 2, which is an unsigned protocol document Bates stamped USPROD-0004085770 and was submitted with discovery. *See also* Exhibit 3, which is the metadata indicating the date that Ms. Goemaat prepared the document.

protocol to address the electronically stored information on the devices seized when the government executed its search warrant."[5]

22.    It was Mr. Qureshi's impression that the Government was going to make the decision on how to move forward with search protocols and get back to him.[6]

23.    Furthermore, the Government's position that they must destroy the evidence seized during the June 30th, 2021 raid is a new decision.  As recently as January 8th, 2026, the Government told this Court "[a]nd there will also be a discovery production that will be made on the filter side of things, the folks handling our filter discovery. We expect that to be a somewhat large production, because it will include the images of approximately 16 devices that were imaged on-site during the execution of the search warrant on Theia's headquarters."[7]

24.    Finally, Mr. Gallagher respectfully submits that not only has the Government misrepresented the nature of what they knew about the trove of digital evidence

---

[5] See Exhibit 4 which is Mr. Qureshi's time sheet submitted in the Fee Application in the Receivership which are publicly available records.  See also Exhibit 5 which is an email from Mr. Qureshi.

[6] See Exhibit 5.

[7] See Exhibit 6 at p.4, ln. 24 to p.5, ln. 4.  Furthermore, as indicated supra, Mr. Gallagher has been seeking the production since at least June of 2025.  Since that time, the Government has been stringing Mr. Gallagher along.  On December 30, 2025 Mr. Gallagher again requested a copy of the seized materials.  The Government responded on January 16th, 2026 stating "[d]uring the execution of a lawfully obtained search warrant on Mr. Olson's residence, the Government imaged 16 devices. Those images have been maintained on the filter side and have not been reviewed by the investigative team. The filter team is working to ensure that all data from those 16 devices is uploaded to the filter team's database. Once that process is complete, data from those devices that is responsive to relevant search terms will be disseminated in accordance with the filter protocol. Again, no member of the prosecution team has reviewed any information from Mr. Olson's seized devices." See Exhibit  7.

and reneged on their oral representations made on the record in Court, more troublingly their averments in their filing at Document #110 countermand what they certified and then was agreed to and signed by all parties in Document #61.

25.   In Document #110, the Government describes the materials seized on June 30th, 2021 as "**unfiltered, unreviewed**." *See* paragraph 11 *supra*.

26.   However, in their written certification in Document #61 they proffered otherwise.

27.   Document #61 is a Privilege Protocol. The document – certified as true by the Government – was suggested and prepared by the Government. Prior to the filing of Document #61, the Government provided the document to all counsel. All counsel relied upon the Government's representations before agreeing to the Unopposed Motion for Entry of an Order Adopting a Privilege Protocol.

28.   In Document #61, on page 6, the Government certified the following:

2.   This Protocol is entered based on the following understanding, based upon **representations from the Government:**
   a.   As part of the execution of the search warrants, the Government seized hardcopy records and ESI from various locations, including email accounts, determined to be within the scope of the warrants. **The Government took steps to identify potentially privileged materials in the items seized, then segregated the potentially privileged materials in a database (the "Filter Database) separate from the rest of the case materials**. The Government took similar steps to identify and segregate potentially privileged materials with items obtained by other means during the investigation.

(emphasis added)

29.    In Document #110, the Government is now attempting to convince this Court that it didn't review the materials that were seized on June 30th, 2021 because it relied upon subpoenas. Yet in their certification, filed in August 2025, **in their own words**, they swore that they did in fact cull the ESI from the search warrant seizures.

30.    While the Government is entitled to make whatever legal arguments that they believe are supported by the law, they are not permitted to bend facts nor mislead this Honorable Court and counsel.

31.    The universe of the Government's averments regarding the June 30th, 2021 seizures is a study in contradictions. For years, the Government discussed with counsel for the potential privilege holders (TGI and Mr. Olson's counsel) a procedure for reviewing the data in the seized devices, yet they told this Court that they only just located the materials. In one filing, the Government says that it filtered and segregated materials. Yet, in a subsequent filing, the Government says that it hasn't reviewed the materials. In an on-the-record proffer, the Government told this Court that it was working on a plan to turn the materials over to counsel. A few months later, they filed a motion seeking to deny all defendants' access to the same.

32.    With all respect due to the United States of America, there is simply no reliability in the averments that they have made regarding what has actually occurred with

respect to the June 30th, 2021 seized evidence.  Mr. Gallagher most respectfully prays that the Court will look with great scrutiny upon the representations made by the Government.

33.    Putting aside for a moment the reliability of the Government's averments, while the current prosecutors claim they have recently "located" the data seizure in question, it wasn't lost. The Government cannot avoid *Brady* and *Giglio* obligations by claiming that they allowed the materials to sit unattended for years. The prosecutor's office is treated as a single entity.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  An individual prosecutor has an affirmative duty to learn of favorable evidence known to others acting on the Government's behalf, including law enforcement officers, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *In re Sealed Case*, 185 F.3d 887, 892 (D.C. Cir. 1999). The D.C. Circuit has further rejected attempts to limit Brady to a prosecutor's actual knowledge, recognizing an affirmative duty of inquiry into information held by government actors closely aligned with the prosecution. *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). Accordingly, a successor prosecutor inheriting a years-long investigation is charged with knowledge of favorable information contained within the prosecution team's files and cannot rely on ignorance created by internal compartmentalization or failure to review the file.  Finally, *Giglio* also held that promises made by one prosecutor are attributable to the entire prosecutor's office, emphasizing that the office functions as a unified entity for purposes of disclosure obligations. The Court stated that "a promise made by one

attorney must be attributed, for these purposes, to the Government". *Giglio*, 405 U.S. at 154.

34.     There is no legitimate rhyme nor reason for the Government shifting averments, proffers, and positions.  Mr. Gallagher respectfully submits that while it may be up for debate whether or not the currently assigned prosecution team has a sufficient knowledge base to opine on the state of their case and investigation, there can be no question that these very prosecutors told this Honorable Court in January – on the record – that they were turning over the missing data.  Yet, three (3) months and seven (7) days later they undertook a complete about-face and sought to make the seized evidence unavailable to the defendants.

35.     Mr. Gallagher respectfully submits that there is no support for the Government's position that they can seize data, work for years on how to review the data, and then destroy the same without providing the materials to the accused.

36.     Mr. Gallagher respectfully submits that what the Government has done with respect to the discovery in this matter is scattershot, obstructive, and denies all defendants of due process. Not only is the Government now trying to deny all defendants access to potentially exculpatory materials that they have held in their hands for five (5) years, but they have also completely abdicated their responsibilities as it applies to seized materials.

*United States v. Maresca*, 2026 U.S. Dist. LEXIS 128709 (DC 2026), while an

Opinion addressing a motion to suppress, is instructive with respect to the

Government's responsibilities when seizing digital evidence.[8]

> The execution of a warrant for electronic media poses unique challenges for law enforcement and implicates significant *Fourth Amendment* interests. The problem is that the volume and **[\*90]** nature of information stored on computers and other electronic devices makes it "often impractical . . . to review all of the information during execution of the warrant at the search location." *Fed. R. Crim. P. 41(e)* advisory committee's note to 2009 amendment. In addition to the immense storage capacity of electronic devices, law enforcement may need to use sophisticated forensic techniques to overcome passwords, encryption, or other "booby traps" to obtain access to materials responsive to the warrant. *Id.* Any search for or manipulation of digital data, moreover, must be done with care, "lest this data be altered or destroyed," *United States v. Ganias, 824 F.3d 199, 212 (2d Cir. 2016)* (en banc), or the authenticity or integrity of the evidence called into question.
>
> To address these challenges, the Judicial Conference amended *Federal Rule of Criminal Procedure 41(e)* in 2009 to authorize a two-step process for the seizure of electronic storage media and electronically stored information. *See Fed. R. Crim. P. 41(e)* advisory committee's note to 2009 amendment. Under *Rule 41(e)(2)(B)*, law enforcement may first "seize or copy [on-site] the entire storage medium" and, then, "review it later [off-site] to determine what electronically stored information falls within the scope of the warrant." *Id.* This two-step process is necessary in the digital **[\*91]** age, but it also raises *Fourth Amendment* concerns. Searches for electronically stored information necessarily result in the "seizure and subsequent retention by the government of . . . vast quantities of irrelevant" personal information, *Ganias, 824 F.3d at 218*, which individuals have a strong interest in shielding from the government, *see Riley v. California, 573 U.S. 373, 393-97, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014)*.

---

[8] Of some note, John Borchert, AUSA was counsel of record for the Government in *Maresca*. Mr. Borchert was also, for the relevant period of the investigation, head of the Government's filter team.

"Tax records, diaries, personal photographs, electronic books, electronic media, medical data, records of internet searches, banking and shopping information—all may be kept in the same device, interspersed among the evidentiary material that justifies the seizure or search." *Ganias, 824 F.3d at 218*.

As *Rule 41* recognizes, the "over-seiz[ure]" of data outside the scope of the warrant is "an inherent part of the electronic search process." *United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1177 (9th Cir. 2010)* (en banc) (per curiam). But that practical necessity does not mean that every over-seizure—no matter the circumstances and no matter how long the government takes to segregate responsive from non-responsive records—is reasonable and thus constitutionally permissible. *See Zelaya-Veliz, 94 F.4th at 338* (timing of the government's off-site review and the corresponding duration of its over-seizure of non-responsive records is subject to the *Fourth Amendment's* general reasonableness standard); *see also Asinor v. District of Columbia, 111 F.4th 1249, 1258-59, 467 U.S. App. D.C. 524 (D.C. Cir. 2024)* ("At both the moment of seizure **[*92]** and throughout its duration, the government's conduct must be reasonable . . . ."); *Metter, 860 F. Supp. 2d at 215* ("[T]he *Fourth Amendment* requires the government to complete its review, *i.e.*, execute the warrant, within a 'reasonable' period of time."). The Court must, accordingly, engage in a case-by-case assessment of whether the government failed to complete its off-site review of seized devices within a reasonable amount of time and thereby "prolonged retention of non-responsive data" in violation of the *Fourth Amendment*. *Zelaya-Veliz, 94 F.4th at 338*.

*Maresca*, at 90-92.

37.     In *Maresca*, Mr. Maresca challenged the Government's prolonged retention of the relevant materials and sought suppression because of a significant delay.[9] Again, while in *Maresca* it was the defendant who sought suppression of the seized

---

[9] Of note, the delay in *Maresca* was less than the purported five (5) year delay in the instant matter.

materials, the Court made clear that it was the Government's responsibility to both scope the seized materials for relevant evidence and cull the irrelevant and/or personal materials from the seized data. *Id.* at 104-05. Mr. Gallagher respectfully submits that such a position is reasonable based upon the nature of our cellular devices. It is axiomatic at this point to say that every cell phone contains personal photographs, health information, and a trove of personal and non-discoverable materials.

38.     It is therefore incumbent upon the Government to make sure that in seizing digital devices, it not only protects privileged information but also prevents the production of personal, non-relevant information from being passed to both the prosecution team and other defendants. *See generally id.* at Note 12 and 13, pp. 105-06.

39.     The Government has completely abdicated their responsibilities to scope and cull private information in its productions. While not included in the Government's proffer, Mr. Gallagher's personal devices were seized and turned over in discovery.[10] When reviewing the production, Mr. Gallagher saw that the Government turned over to all of the defendants a huge trove of his personal material. All of the defendants now have hundreds of pictures of Mr. Gallagher's

---

[10] Mr. Gallagher respectfully submits that it should not be lost on this Honorable Court that the Government is not treating each defendant in similar fashion. The Government seized Mr. Gallagher's cell phones. After a privilege review, the contents of the cell phone were passed in discovery to all of the defendants. Yet for some unknown reason, Mr. Olson's devices have been returned to Mr. Olson without having been treated in the same manner as Mr. Gallagher's devices.

children, grandchildren, and personal notes from his family detailing how much he is loved and revered by his family and community.

40.    While Mr. Gallagher's privacy was ignored by the Government, what the Government has done to Mr. Olson is simply disgusting. To his horror, the undersigned and his investigative team have uncovered a trove of photographs and other materials that are of the most personal and private nature to Mr. Olson. In the Government's production of two (2) of Mr. Olson's cellphones,[11] the Government has turned over to all counsel video and photographs of the most intimate of sex acts. In at least one of the photographs, a female engaged in the sex act is identifiable and a named potential witness. The Government's Olson production also includes many personal photographs and videos.

41.    Mr. Gallagher is proud of his family and the love that they show him. However, the Government had no right to disseminate his personal materials to other defendants.

42.    To be clear: Mr. Gallagher carries no water for Mr. Olson, does not have a joint defense agreement with Mr. Olson, and cannot raise the horrific privacy violation the Government fostered upon Mr. Olson. However, the violation is relevant and instructive as it shows this Court that the Government either has no idea what they are doing or that they simply do not care about their duties and responsibilities under the law.

---

[11] *See* Document #110, Note 4.

43.     The Government's actions with respect to how they have handled the discovery in this matter are patently offensive to all notions of due process and fundamental fairness. Their current decision to try and deny Mr. Gallagher access to potentially exculpatory information adds a very real injury to the months of insult.[12]

44.     Finally, the burden placed upon the defendants by the Government's position cannot be overstated. As the Government failed in its duty to do a responsiveness review, scope, and cull the materials when they initially seized the digital evidence, the defendants are now placed in a lose/lose situation. Whether the Court orders the Government to maintain the materials or agrees that the Government may return the items to Mr. Olson and TGI, all of the defendants will be forced to take action to review the same. It is the ethical duty of all defense counsel to review all potentially relevant materials to defend their clients. Thus, if the Court denies Mr. Gallagher's request or forces the defendants to scope and cull the materials themselves, the Court will be imposing on all defendants an impossible burden.

45.     Granting the Government's request will relieve them of their duty to scope, cull, and produce the materials. Such an Order will then cause all defendants to seek

---

[12] The prejudice can't be overstated. There are allegations in the within matter that Mr. Olson purportedly created documents, including bank statements, that were shown to potential investors. Some of those documents have not been turned over in discovery; i.e. they don't exist on the TGI servers. It is a very real possibility that the "smoking gun" documents may be on one of Mr. Olson's devices. Thus, by returning Mr. Olson's materials, the Government has placed counsel for Mr. Olson in the unenviable position of having to review Mr. Olson's materials and, if subpoenaed, providing materials that are potentially detrimental to his client to co-defendants who will use the materials to his client's detriment.

the materials via compulsory process. That work will add tens of thousands of dollars to litigation costs plus will exhaust the finite time resources of all counsel. Unlike the Government, none of the defendants can merely add attorneys, teams, and agents to their defense. Every motion, hearing, and typed word has an actual cost to each of the defendants.

46.   Had the Government just done what the law requires of them and scoped and culled the materials in June of 2021, we would not be in this position. Mr. Gallagher has been advised by his litigation support team that, if they are forced to scope and cull 23 terabytes of data, the costs will be well in excess of a hundred thousand dollars.[13] Thus, by granting the Government's motion or forcing the defendants to scope and cull the material, the Court will be pricing Mr. Gallagher out of both effective assistance of counsel and due process.

47.   Mr. Gallagher respectfully submits that when the Government seized the data it became their duty and burden to scope, cull and produce the materials. The Government should not be permitted to abdicate its responsibility to a defendant's detriment such that an insurmountable burden transfers to the accused. Had the Government only done their duty – scope and cull the relevant materials over the five (5) years of this investigation – none of the defendants would be in this current position. Mr. Gallagher prays that the Court will hold them to their burden and force them to do their duty.

_____

[13] In fact, Cornerstone Discovery indicated that it could cost Mr. Gallagher hundreds of thousands of dollars.

WHEREFORE, Mr. Gallagher prays that the Court will deny the Government's attempts to destroy data seized pursuant to search warrant and force them to scope and cull the materials in question.

Respectfully submitted,

/s/ Michael J. Diamondstein
**Michael J. Diamondstein**
**Counsel for John J. Gallagher**
Michael J. Diamondstein, P.C.
Suite 1815
Two Penn Center Plaza
15th & John F. Kennedy Blvd.
Philadelphia, PA 19102
(215) 940-2700
mjd@michaeldiamondstein.com

/s/ Joan D. Gallagher
**Joan D. Gallagher**
**Counsel for John J. Gallagher**
Joan Gallagher Law, P.C.
1600 Market Street
Suite 1320
Philadelphia, PA 19103
(215) 963-1555
joanie@gallagher-law.com

/s/ Stephen P. Patrizio
**Michael J. Diamondstein**
**Counsel for John J. Gallagher**
Law Office of Stephen P. Patrizio
2 Penn Center, Suite 1205
1500 JFK Boulevard
Philadelphia, PA 19102
(215) 569-2121
spatrizio@lawpatrizio.com

## CERTIFICATE OF SERVICE

On this **30**th day of **June, 2026,** Michael J. Diamondstein, Joan D. Gallagher, and Stephen P.

Patrizio, being duly sworn according to law, hereby certify that a true and correct copy of this

document was served upon the following individuals in the manner specified:

> **The Honorable Royce C. Lambert**
> U.S. District Court for the District of Columbia
> 333 Constitution Avenue N.W.
> Washington D.C. 20001
> **VIA ECF**
>
> **Clerk's Office**
> U.S. District Court for the District of Columbia
> 333 Constitution Avenue N.W.
> Washington D.C. 20001
> **VIA ECF**
>
> **Alexis Hughes**
> **Rebecca Ross**
> U.S. Attorney's Office for the District of Columbia
> 601 D St NW
> Washington, DC 20004
> **VIA ECF**

/s/ Michael J. Diamondstein
**MICHAEL J. DIAMONDSTEIN**
**Counsel for John J. Gallagher**

/s/ Joan D. Gallagher
**JOAN D. GALLAGHER**
**Counsel for John J. Gallagher**

/s/ Stephen P. Patrizio
**STEPHEN P. PATRIZIO**
**Counsel for John J. Gallagher**